# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MOVORA LLC (f/k/a OSSIUM NEWCO LLC); OSSIUM BIDCO, LLC; and VETERINARY ORTHOPEDIC IMPLANTS, LLC (f/k/a VETERINARY ORTHOPEDICS IMPLANTS, INC.), | ) ) ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | C.A. No. N23C-05-034 MAA CCLD |
| CLAUDE GENDREAU; THE CLAUDE GENDREAU INVESTMENT TRUST U/A/D MARCH 16, 2013; PATRICK GENDREAU; BRIAN BEALE; and TIMOTHY VAN HORSSEN, | ) ) ) ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) ) ) | |

Submitted: October 2, 2024
Decided: December 2, 2024
Written Decision Withdrawn, Corrected and Reissued: January 23, 2025

## <u>MEMORANDUM OPINION</u>

*Plaintiffs/Counterclaim Defendants' Motion for Summary Judgment:*
**GRANTED** *in part*, **DENIED** *in part*.

*Defendants/Counterclaim Plaintiffs' Motion for Partial Summary Judgment:*
**DENIED.**

Megan W. Cascio, Esquire, and Phillip Reytan, Esquire of MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE, and Kevin M. Downey, Esquire, R. Kennon Poteat III, Esquire (Argued), Eden Schiffmann, Esquire, Anna K. Tsiotsias, Esquire, and Ilana B. Frier, Esquire of WILLIAMS & CONNOLLY LLP, Washington, DC, *Attorneys for Plaintiffs/Counterclaim Defendants*.

David E. Ross, Esquire, S. Reiko Rogozen, Esquire, and Benjamin M. Whitney, Esquire of ROSS ARONSTAM & MORITZ LLP, Wilmington, DE, and Andrew W. Vail, Esquire (Argued), Benjamin J. Bradford, Esquire (Argued), and Lauren M. Benigeri, Esquire of JENNER & BLOCK LLP, Chicago, IL, *Attorneys for Defendants/Counterclaim Plaintiffs Dr. Claude Gendreau and The Claude Gendreau Investment Trust U/A/D March 16, 2013*.

**Adams, J.**

## I. INTRODUCTION

In June 2020, the parties entered into the Amended and Restated Membership Interest Purchase and Exchange Agreement (the "MIPA") by which plaintiffs bought Veterinary Orthopedic Implants ("VOI") from defendants. The sale (the "Transaction") occurred while VOI was defending a patent infringement suit brought by its competitor, non-party DePuy Synthes ("DePuy"), in the Middle District of Florida (the "Patent Litigation"). The MIPA contained a provision requiring defendants to indemnify plaintiffs for losses related to the Patent Litigation (the "Indemnification Provision"). In April 2023, the Patent Litigation settled (the "Settlement"). Pursuant to the Settlement, VOI and non-party Fidelio Capital AB ("Fidelio") agreed to pay DePuy $70 million and agreed to stop selling infringing plates. ███████████████████████████████████████████.

Plaintiffs then issued a claim notice to defendants seeking indemnification for the Settlement and all costs related to the Patent Litigation. Defendants responded that no indemnification was due asserting a variety of defenses. Plaintiffs subsequently brought this action to recover the allegedly owed indemnification. Before the Court is Plaintiffs/Counterclaim Defendants' Motion for Summary Judgment and Defendants/Counterclaim Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs/Counterclaim Defendants' Motion for Summary Judgment is

1

GRANTED in part and DENIED in part.  Defendants/Counterclaim Plaintiffs'

Motion for Partial Summary Judgment is DENIED.

## II.    RELEVANT FACTS[1]

### A. The Parties

Plaintiffs/Counterclaim Defendants are Movora LLC (f/k/a/ Ossium NewCo,

LLC) ("Movora"), Ossium BidCo LLC ("Ossium BidCo"), and VOI (collectively

"Plaintiffs").[2]  VOI is a direct subsidiary of Movora.[3]  VOI  sells surgical implants

for domesticated animals.[4]

Non-party Fidelio is the Swedish investment firm that purchased VOI under

the MIPA by forming wholly owned subsidiary Ossium BidCo.[5]

Defendants/Counterclaim  Plaintiffs  are  Claude  Gendreau  ("Claude")[6]  and

The Claude Gendreau Investment Trust (the "Trust", with Claude,  "Defendants").[7]

Claude is the trustee of the Trust and VOI's founder.[8]

---

[1] The Court notes the consequences of both sides filing motions are that facts repeat in briefing and exhibits are duplicated.  When the Court cites one party's brief or exhibits instead of the other's, the Court intends to imply no preference or priority.  The Court merely provides a citation to the record for the fact; other citations may provide the same information, but the Court will not cite every part of the record where the information can be found.

[2] D.I. 1. ("Compl.") ¶¶ 8-10.  The MIPA lists Ossium Bidco, LLC as the Parent and Ossium Newco, LLC as the Buyer.  *See generally* PMSJ Ex. 1 (MIPA).

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 16.

[5] D.I. 31 ("Answer") ¶¶ 9, 26, 46–51.

[6] Because Claude Gendreau and Patrick Gendreau share a surname, this opinion refers to them by their first names for clarity.  The Court intends no disrespect or familiarity.

[7] Compl. ¶ 11.  At points throughout this Memorandum Opinion, the Court refers to the original defendants listed in the caption as the "Defendants" to reflect the parties' briefs.

[8] *Id.*

Non-party Patrick Gendreau ("Patrick") served as VOI's CEO before the Transaction.[9] After the Transaction, Patrick remained CEO of VOI until December 2022.[10] Patrick was originally a defendant in this action until June 14, 2024, when the Court granted the parties' stipulation of dismissal of "all claims asserted by Plaintiffs against [Patrick] and all counterclaims asserted by [Patrick] in this Action[.]"[11]

## B. The Parties' Negotiations, the Transaction, and the MIPA

In late 2019, Patrick initiated discussions to sell VOI to Fidelio after a previous transaction fell through due to the Patent Litigation.[12] During negotiations, Patrick relayed to Claude that Fidelio wanted to "come up with a creative way to box in the lawsuit . . . for us to consider going to the next step and sharing more financials with them."[13] Although Patrick assumed Fidelio would prefer an asset sale because it would leave "the liabilit[y] such as debt and potential lawsuit with Defendants, Fidelio responded it intended to purchase "all assets and liabilities."[14] Fidelio sought "an indemnification for losses related to any liability arising from the patent litigation."[15]

---

[9] *Id.* ¶ 12.
[10] *Id.*
[11] D.I. 197.
[12] D.I. 214 ("PMSJ") Ex. 3 at Tr. 26:22-29:16, 150:23-153:3; *id.* Ex. 16 at Movora_00037539-42.
[13] *Id.* Ex. 33 at CLAUDE00008027.
[14] *Id.* Ex. 38 at WELLS0059690-91.
[15] *Id.*

On January 7, 2020, Claude, the Trust, Patrick, and Ossium AG[16] executed a letter of intent (the "LOI").[17] Pursuant to the LOI, Fidelio agreed to buy VOI for almost $100 million and the parties agreed "that the Sellers shall indemnify and hold [Movora, VOI, and their affiliates] . . . harmless from and against any and all claims, losses, damages, liabilities, costs, fees and expenses . . . suffered or incurred by any of them resulting from" the Patent Litigation.[18]

On June 11, 2020, the parties executed the MIPA.[19] Pursuant to the MIPA, Buyer paid a total of $99,868,328 in four forms of consideration: (1) a $30,575,894 base purchase price; (2) a $23,014,864 seller note to Claude; (3) a $26,277,570 payment to Patrick and other non-party owners; and (4) a $20 million contingent closing note.[20]

At the core of this dispute is the MIPA's indemnification provision, Section 8.2(a) (the "Indemnification Provision").[21] In the Indemnification Provision, Defendants agreed to:

> severally (in proportion to their Percentage Interests) but not jointly indemnify, defend and hold harmless the Buyer, its Affiliates (including the Parent and the Company) and their respective employees, officers and members and managers (the "Buyer Indemnitees") from and

[16] *Id.* Ex. 41 at CLAUDE0017334. Ossium AG is listed in the LOI as "a company duly incorporated and organized under the laws of Switzerland. . . (the "Buyer")." *Id.*

[17] *Id.* at CLAUDE0017333-41.

[18] *Id.* §§ 1.1, 1.3(c). The damages would be set off from a $20 million note, and for damages exceeding $20 million, "the Sellers shall indemnify [Movora and VOI] . . . in cash." *Id.* §1.3(d).

[19] PMSJ Ex. 2 at Tr. 236:7–9; *id.* Ex. 1 at MIPA, Recitals.

[20] MIPA at Sch. 2.3; *id.* Ex. 8.

[21] *Id.* § 8.2(a).

against any and all Damages arising out of or relating to . . . (iii) any Damages suffered by the Company as a result of, or in connection with, the Patent Litigation[.][22]

"Damages" are defined to include "any losses, liabilities, damages, awards, . . . payments (including amounts paid in settlement), costs and expenses (including costs of investigation, preparation, and defense, and the fees and disbursements of counsel)[.]"[23]

Given the indemnity obligation, Defendants sought to retain control over the Patent Litigation.[24] The MIPA designated Patrick as "Sellers Representative" for purposes of the Patent Litigation and empowered him:

> to act as [Sellers and VOI's] exclusive agent and attorney in fact . . . to take any and all actions and make any and all determinations in respect of [the MIPA] . . . [including] to initiate, prosecute, defend, and/or settle such claims and disputes.[25]

Specifically, the MIPA allowed Patrick to "control the defense of the Patent Litigation and any settlement negotiations relating thereto on behalf of the Company."[26] Regarding settlement, the MIPA provided Patrick could not "settle or offer to settle the Patent Litigation without the prior written consent of the Buyer,"

---

[22] *Id.* (emphasis removed). The Patent Litigation is defined as "the patent litigation pending in the United States District Court for the Middle District of Florida under the caption *DePuy Synthes Products, Inc. et al. v. Veterinary Orthopedic Implants, Inc.*, 3:18-cv-01342-HES-PDB (M.D. Fla.), together with any appeals therefrom and any related or derivative Actions." MIPA at 9.

[23] *Id.* § 1.

[24] *See, e.g.*, MIPA §§ 5.5(b), 5.11(a).

[25] *Id.* § 5.11(a). Patrick also remained as CEO of VOI. *Id.* at 4.

[26] *Id.* § 5.5(b)(1).

unless the settlement imposed no material obligations, except ceasing infringement.[27]

The MIPA also contains a retention cap provision which provides, in relevant part:

> No Party shall have any indemnification obligation under this Agreement to the extent the aggregate amount of indemnifiable Damages would exceed the aggregate consideration paid by the Buyer for the Units; provided, that the foregoing limitation shall not apply to any claim for indemnification based on fraud, intentional misrepresentation, a knowing and willful breach of covenant or the expenses of the Indemnified Party in enforcing its right under this Article 8[.][28]

Finally, Section 5.7 prohibits any party from issuing a press release related to the MIPA without the other party's consent, except "to the extent disclosure may be required, upon advice of counsel, by applicable Law."[29]

## C. The Patent Litigation and Settlement

In November 2018, before the parties began negotiating the Transaction, VOI's competitor DePuy initiated the Patent Litigation.[30] DePuy alleged certain of VOI's tibial plateau leveling osteotomy ("TPLO") plates and screws infringed DePuy's '921 Patent.[31] DePuy litigated aggressively in the Patent Litigation, and by May 2019, Patrick noted DePuy's "list [of accused products] keeps getting larger[.]

---

[27] *Id.* § 5.5(a)-(b).
[28] *Id.* § 8.3(a).
[29] *Id.* § 5.7.
[30] *See* PMSJ Ex. 17 ("Pat. Litig. Compl.").
[31] *Id.* ¶¶ 8-18.

. . . We went from a dozen items to over 180 TPLO & CBLO plates."[32] In response, Patrick stated VOI would "expedite the design and release [of] the Elite 2.0 TPLO plates[.]"[33] In June 2020, VOI's then-counsel, Fox Rothschild, informed Patrick that "we fully expect [DePuy] to allege your new plates also infringe[.] . . . They have certainly suggested they will be doing so."[34] Around this same time, Patrick began to criticize Fox Rothschild's performance and the cost of the Patent Litigation.[35]

After the Transaction closed, the Patent Litigation continued to develop. Finnegan, Henderson, Farabow, Garrett & Dunner ("Finnegan") replaced Fox Rothschild as VOI's counsel; a change with which Patrick agreed.[36] Patrick received Finnegan's engagement letter and directed Fidelio to sign it for VOI while he provided VOI's financial information to Finnegan necessary for their retention.[37]

---

[32] *Id.* Ex. 23 at CLAUDE00008766. Also in May 2019, Patrick noted "yet another devastating setback" that DePuy "was about to obtain a 'continuation' 'design patent' that will piggyback on their already existing 'utility' TPLO patent." *Id.* Ex. 21 at CLAUDE00008472. On July 3, 2019, DePuy requested leave to file an Amended Complaint and Demand for Jury Trial (the "Closing Complaint.") . D.I. 39 ¶ 45. The Closing Complaint still only involved the '921 patent, and did not make any reference to Fidelio or any other patent. *Id.*

[33] *Id.* Ex. 3 at Tr. 105:11-106:21. According to Patrick, at that time, "marketing hadn't decided exactly what we were going to call those and that's why we internally referred to them as 2.0. When they were released, I don't believe they had the name 'Elite.'" *Id.* at 106: 8-13.

[34] PMSJ. Ex. 50 at Movora_00071582 (emphasis removed). Also during discovery in the Patent Litigation, DePuy uncovered smoking-gun evidence that VOI intentionally copied DePuy's plates. *See* PMSJ at 5-6. The parties dispute the extent to which Plaintiffs were aware of this information. *Compare id.*, *with* D.I. 213 ("DMSJ") at 4-6 (Defendants contend Plaintiffs, amidst litigation, continued to profit from the alleged infringements).

[35] *See*, *e.g.*, PMSJ Ex. 22; *id.* Ex. 25; *id.* Ex. 47.

[36] PMSJ Ex. 3 at Tr. 280:16-281:12; *id.* Ex. 53; *id.* Ex. 55 (Patrick informed the other Defendants, "[w]e decided to switch legal defense firms.").

[37] PMSJ at Ex. 54; *id.* Ex. 56. The parties also dispute the extent to which Patrick remained in control of the Patent Litigation after Finnegan's retention. VOI's counsel at Finnegan testified Patrick "always" had "decision-making authority with respect to the representation." PMSJ Ex.

7

Following the close of the Transaction, VOI continued selling the allegedly infringing TPLO plates and launched the NXT plate that Patrick discussed in May 2019.[38]

In December 2020, DePuy filed a Second Amended Complaint in the Patent Litigation, adding Fidelio as a defendant.[39] In June 2021, DePuy moved to amend its complaint to allege the NXT plate infringed its '728 Patent.[40] In 2022, VOI released two more new plates, the Compresiv and Versiv, both of which were introduced by VOI at trial as non-infringing alternatives.[41]

---

5, Tr. 33:11-36:16. VOI's counsel categorized Patrick as "the lead" and stated Finnegan would "make sure that Patrick approved" any decision regarding VOI's representation. *Id.* at Tr. 35:4-20, 38: 14-16. Patrick, in his deposition, could not provide an example of something he asked Finnegan to do that Finnegan did not do. PMSJ Ex. 3 at Tr. 307:1-308:3. Yet, documents produced in discovery also show aspects of Finnegan's representation occurred without Patrick's input. DMSJ Ex. 20-30 (documents relating to the Patent Litigation Patrick was not included on); *id.* Ex. 33-34 (documents discussing "trial strategy" and "evidence review" between Fidelio and Finnegan, without Patrick). Also, at trial, Finnegan chose not to ask the Patent Litigation jury to allocate liability between VOI and Fidelio, despite Patrick requesting an allocation. D.I. 225 ("PMSJ Opp'n") Ex. 35 at 41:21-42:16; *id.* Ex. 36 at Movora_00129832-33.

[38] Answer ¶ 72; DMSJ Ex. 1 at 216:6-7 ("So Elite and NXT, just for clarity, we stopped selling at the end of 2022.[]"); *id.* Ex. 3 at 6 ("But what's interesting is they then launch Elite and the NXT plates in 2018 and '20, and those plates contained all the features they were talking about in this Fixin Style plate."); PMSJ Opp'n Ex. 40.

[39] PMSJ Opp'n Ex. 39. The Second Amended Complaint was dated December 3, 2020 and a public version was filed June 8, 2021. *See also* D.I. 39 ¶ 73 (the Second Amended Complaint added "(a) Fidelio as a defendant, (b) new allegations asserting that Fidelio was independently liable for infringement and (c) a new Count Three against Fidelio entitled 'Fidelio Direct Infringement of the '921 Patent.").

[40] *See* PMSJ Opp'n Ex. 40. "On June 8, 2021 the United States Patent and Trademark Office ('USPTO') issued U.S. Patent No. 11,026,728 (the '728 patent[]). The '728 patent is a continuation of the currently-asserted" '921 patent.).

[41] PMSJ Ex. 67 at Tr. 1223:24-1226:20, 1416:18-1418:4.

On January 13, 2023, the Patent Litigation jury found VOI and Fidelio liable and awarded DePuy $59.5 million in damages.[42] The jury found both VOI and Fidelio were "willful infringers."[43] The same day, Fidelio issued a press release, without Defendants' consent, stating it had "contractual indemnification protection for the amount of the verdict."[44] DePuy then moved to treble damages.[45] On February 22, 2023, the Patent Litigation court granted DePuy's motion for a permanent injunction, enjoining VOI from selling any infringing products.[46]

Once DePuy sought to treble damages, VOI began to negotiate a settlement.[47] These negotiations were led by Movora's new CEO, Colleen Flesher.[48] The parties agreed to the Settlement on April 3, 2023.[49] Patrick, as Sellers' representative, approved the Settlement through counsel.[50] After the parties executed the

---

[42] *Id.* Ex. 68 at 3.

[43] *Id.* at 4. The jury was not asked to, and did not, apportion fault between the parties for the pre- vs. post-closing conduct. *Id.* at 1, 4.

[44] Answer ¶¶ 95-96, 120–21.

[45] PMSJ Opp'n Ex. 44 at 1-2; Answer ¶ 15; Compl. ¶ 35.

[46] *Id.*

[47] PMSJ Ex. 3 at Tr. 325:1-329:1.

[48] *Id.* at 325:13-16. Due to Flesher's prior relationship with DePuy, Defendants authorized Flesher to negotiate a settlement. *Id.*

[49] *See* PMSJ Ex. 79 (Settlement and ███████ Agreement). Specifically, VOI and Fidelio agreed to pay DePuy $70 million and abide by the permanent injunction regarding certain of VOI's plates. *Id.* §§ 3.01, 4.01. ████████████████████████████ ████████████████████. *Id.* §§ 1.05, 5.01.

[50] PMSJ Ex. 78.

9

Settlement, Plaintiffs issued a claim notice to Defendants seeking indemnification.[51]

Defendants responded that no indemnification was due asserting several defenses.[52]

### D. Procedural History

Plaintiffs initiated this action by filing their Complaint on May 4, 2023.[53] On July 12, 2023, Defendants filed an Answer asserting several Affirmative Defenses and Counterclaims.[54] In their Answer, Defendants claimed Plaintiffs breached the MIPA and sought a declaratory judgment on a variety of issues related to damages and contractual interpretation.[55] Plaintiffs answered Defendants' Counterclaims on August 2, 2023.[56]

On April 18, 2024, this Court denied Defendants' Motion for Judgment on the Pleadings.[57] The parties filed Cross-Motions for Summary Judgment on July 29, 2024[58] and completed briefing on September 9, 2024.[59] The Court held oral argument on October 2, 2024 and reserved decision.[60] This is the Court's ruling on the Motions.

---

[51] *Id.* Ex. 82.
[52] *Id.* Ex. 83.
[53] *See generally* Complaint.
[54] *See generally* Answer.
[55] *See id.* ¶¶ 119-177.
[56] *See generally* D.I. 39 ("Countercl. Opp'n").
[57] *Movora, LLC v. Gendreau*, 2024 WL 1675370, at *1 (Del. Super. Apr. 18, 2024).
[58] *See generally* PMSJ; DMSJ.
[59] *See generally* D.I. 232 ("PMSJ Reply"); D.I. 233 ("DMSJ Reply").
[60] D.I. 244 (Oct. 2, 2024 Oral Arg. Tr.) ("Oral Argument Tr.").

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[61] The court determines whether a genuine issue of material fact exists, "but [does] not . . . decide such issues."[62] The movant "bears the initial burden of demonstrating that the undisputed facts support his claims or defenses."[63] Once the movant meets its burden, the burden will shift to the nonmoving party to "show that there are material issues of fact that the ultimate fact-finder must resolve."[64]

When confronted with cross-motions for summary judgment "and the parties 'have not argued the existence of disputed issues of material fact, the court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.'"[65] By filing cross-motions for summary judgment, however, the parties do not concede "an absence of a factual

---

[61] Super. Ct. Civ. R. 56(c).
[62] *Merrill v. Crothall-Am. Inc.*, 606 A.2d 96, 99 (Del. 1992) (citations omitted).
[63] *In re Asbestos Litig.*, 2020 WL 7663822, *2 (Del. Super. Dec. 23, 2020) (citations omitted).
[64] *Olga J. Nowak Irrevocable Tr. v. Voya Fin'l Inc.*, 2020 WL 7181368, at *3 (Del. Super. Nov. 30, 2020) (citing *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).
[65] *Benchmark Invs. LLC v. Pacer Advisors, Inc.*, 2024 WL 3567367, at *4 (Del. Super. July 29, 2024) (quoting *Gateway Ests., Inc. v. New Castle Cty.*, 2015 WL 13145613, at *13 (Del. Super. Sept. 29, 2015)).

issue."[66]  "Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[67]  Thus, the existence of a genuine issue of material fact still prevents the court from resolving the case on cross-motions for summary judgment.[68]

## IV.  ANALYSIS

### A. The Parties' Contentions[69]

Plaintiffs argue the MIPA entitles them to indemnification from Defendants for the Settlement.[70]  Pursuant to the MIPA, Defendants must indemnify Plaintiffs for "any Damages suffered by the Company as a result of, or in connection with, the Patent Litigation."[71]  Plaintiffs argue the Settlement falls within the definition of Damages, and Defendants thus breached the MIPA by refusing to indemnify Plaintiffs.[72]

---

[66] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citation omitted).
[67] *Id.*
[68] *Id.*
[69] The parties' arguments are consistent across the Cross-Motions for Summary Judgment. Because Plaintiffs' Motion is for complete summary judgment, it encapsulates the issues raised by Defendants' partial Motion.  Accordingly, the Court frames the contentions based on Plaintiffs' Motion, while incorporating arguments raised in Defendants' Motion.  In so doing, the Court does not imply any preference for Plaintiffs' arguments.
[70] PMSJ at 22.
[71] MIPA § 8.2(a).
[72] PMSJ at 22-23.

Defendants do not dispute Plaintiffs' argument. Rather, Defendants contend Plaintiffs also breached the MIPA such that Defendants' indemnification obligations were excused.[73] First, Defendants assert Plaintiffs usurped control of both the Patent Litigation and Settlement negotiations in violation of the MIPA.[74] Second, Defendants argue Plaintiff breached the implied covenant of good faith and fair dealing by taking actions that improperly increased the Patent Litigation's scope and the Settlement amount.[75] Finally, Defendants contend Fidelio's issuance of a press release without Defendants' approval breached the MIPA.[76]

Plaintiffs respond that Defendants, through Patrick, always remained in control of both the Patent Litigation and Settlement negotiations.[77] Plaintiffs argue the implied covenant claim fails because there is no "gap" in the MIPA that would implicate the implied covenant.[78] Finally, Plaintiffs contend the press release did not breach the MIPA because it was made to comply with Swedish securities law and thus falls within Section 5.7's exception.[79]

---

[73] PMSJ Opp'n at 20-26.

[74] *Id.* at 20-23. This mirrors Defendants' contentions in their Third Affirmative Defense (Answer at 27-28) and Counterclaims One and Two (Answer ¶¶ 114-141).

[75] PMSJ Opp'n at 24-25. This mirrors Defendants contentions in their Sixth Affirmative Defense. Answer at 28.

[76] PMSJ Opp'n at 25-26. This mirrors Defendants contentions in their Third Affirmative Defense. Answer at 27-28.

[77] PMSJ at 31-33; PMSJ Reply at 18-20.

[78] PMSJ at 35-36; PMSJ Reply at 21.

[79] PMSJ at 34-35; PMSJ Reply at 20-21.

Separate from their breach of contract arguments, Defendants contend Plaintiffs' failure to apportion the Settlement precludes any indemnification.[80] Defendants argue the Settlement contains both recoverable and non-recoverable amounts, and Plaintiffs' failure to allocate means no indemnification is due.[81] Specifically, Defendants contend the "████████████████████████,"[82] "[d]amages incurred by Fidelio,"[83] Plaintiffs' "[p]ost-MIPA [p]rofits,"[84] and any liability arising from the '728 Patent,[85] are not recoverable.

Plaintiffs note the Indemnification Provision's language is broad, using phrases like "any and all," and "arising out of or relating to."[86] Plaintiffs argue the entire Settlement falls within this indemnification language, including the portions Defendants specifically challenge.[87]

Beyond the issue of indemnification liability, Plaintiffs ask the Court to grant summary judgment dismissing Defendants' Counterclaims and Affirmative Defenses.[88] Defendants' Counterclaims Three and Four, along with Defendants' Fourth Affirmative Defense, concern the MIPA's limitation on the amount of

---

[80] DMSJ at 20-34.
[81] *Id.* These arguments mirror Defendants' assertions in Counterclaim Five. Answer ¶¶ 156-62.
[82] PMSJ Opp'n at 28.
[83] *Id.* at 28-29
[84] *Id.* at 29.
[85] *Id.*
[86] PMSJ at 28-31.
[87] *Id.*
[88] The Court notes Defendants "no longer assert[] Affirmative Defenses Two and Eight." PMSJ Opp'n at 36 n.13. Accordingly, the Court need not address those defenses.

14

aggregate indemnification.[89]  Defendants argue Section 8.3(a) of the MIPA eliminates the indemnification obligation if the amount due exceeds the "aggregate consideration."[90]  Plaintiffs respond that Section 8.3(a)'s plain text shows it is a "cap," not a forfeiture provision.[91]

Finally, Defendants' Seventh Affirmative Defense asserts Plaintiffs failed to mitigate damages.[92]  Defendants contend the duty to mitigate arose when Defendants contested the indemnity claim in November 2022.[93]  Plaintiffs respond that the only substantive act Defendants claim breached the duty to mitigate was the "failure to settle the Patent Litigation and to obtain insurance proceeds."[94] This, Plaintiffs claim, is insufficient to show a failure to mitigate.[95]

---

[89] Answer ¶¶ 151-62.

[90] *Id.*; PMSJ Opp'n at 26-28.  In their Answer, Defendants contend the "aggregate consideration is $53,590,758."  Answer at 56, 160, 161.  Defendants, in opposing Plaintiff's Motion for Summary Judgment, no longer disputed the aggregate consideration.  *See* PMSJ Opp'n.  Thus, the Court holds Defendants waived this argument and will consider the aggregate consideration to be $99,868,328.

[91] PMSJ at 24-26.

[92] Answer at 24.

[93] PMSJ Opp'n at 36.

[94] PMSJ at 36 (quoting Answer at 29).

[95] *Id.*

**B. There is a Genuine Dispute of Material Fact Regarding whether Plaintiffs Materially Breached the MIPA, Thereby Excusing Defendants' Indemnification Obligation.**

Plaintiffs seek summary judgment on Count I of their Complaint regarding Defendants' breach of the Indemnification Provision.[96] A breach of contract requires: (1) the existence of a contract; (2) the breach of a contractual obligation; and (3) resulting damages.[97] Indemnity agreements "are interpreted in accordance with general principles of contract law," such that words are given their ordinary meaning.[98] Defendants do not meaningfully dispute that their failure to indemnify some portion of the Settlement is a breach of the MIPA.[99] Rather, Defendants argue Plaintiffs' breaches excuse Defendants' performance.[100]

Pursuant to basic principles of contract law, a "party is excused from performance under a contract if the other party is in material breach thereof."[101] Conversely, "a slight breach by one party, while giving rise to an action for damages, will not necessarily terminate the obligations of the injured party to perform under the contract."[102] "The question of breach is of sufficient importance to justify non-

---

[96] PMSJ at 22-23. By extension, Plaintiffs also seek summary judgment on Defendants' various counterclaims and affirmative defense related to Defendants' indemnification obligations. *Id.* at 23-37.

[97] *VLIW Tech. LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).

[98] *IFC Interconsult, AG v. Safeguard Int'l P'rs, LLC*, 438 F.3d 298, 317-18 (3d Cir. 2006) (applying Delaware law).

[99] *See generally* PMSJ Opp'n.

[100] *Id.* at 20-26.

[101] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2023 WL 6383240, at *20 (Del. Ch. Oct. 2, 2023) (quoting *In re Mobilactive Media, LLC*, 2013 WL 297950, at *13 (Del. Ch. Jan. 25, 2013)).

[102] *Mobilactive*, 2013 WL 297950, at *13 (internal quotation omitted).

16

performance by the non-breaching party is one of degree and is determined by 'weighing the consequences in the light of the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.'"[103]

The Court finds that only one of Defendants' arguments regarding Plaintiffs' alleged breach of the MIPA may constitute a material breach. Specifically, the Court finds a genuine issue of material fact exists regarding whether Plaintiffs improperly usurped control of the Patent Litigation and Settlement negotiations. The MIPA's plain terms required Defendants, through their representative Patrick, to control both the Patent Litigation and Settlement negotiations on VOI's behalf.[104] Both parties cite documents and deposition testimony supporting their arguments on the control issue.[105] On a motion for summary judgment, the Court will not weigh these conflicting documents to resolve the inherently factual issue of who controlled the Patent Litigation and Settlement negotiations.[106] Plaintiffs' Motion for Summary Judgment regarding Defendants' Third Affirmative Defense as it relates to control of the Patent Litigation and the Settlement is **DENIED**.[107]

---

[103] *Id.* (quoting *E. Elec. & Heating, Inc. v. Pike Creek Prof'l Ctr.*, 1987 WL 9610, at *4 (Del. Super. Apr. 7, 1987), *aff'd*, 540 A.2d 1088 (Del. 1988)).

[104] MIPA §§ 5.5(b)(1), 5.11(a).

[105] *See, e.g.*, PMSJ at 32-33 (citing documents supporting Patrick's control of the Patent Litigation). *But see, e.g.*, PMSJ Opp'n at 9-11 (citing documents supporting Defendants' argument on control of the Patent Litigation).

[106] *See Merrill v. Crothall-Am. Inc.*, 606 A.2d 96, 99–100 (Del. 1992) (citation omitted).

[107] Defendants also included allegations regarding control in Counterclaim One. For purposes of clarity, those claims survive this motion for summary judgment.

Conversely, no genuine dispute of material fact exists regarding whether Fidelio's issuance of the press release after the Patent Litigation verdict excuses Defendants' performance. While MIPA Section 5.7 requires joint consent to issue a press release related to the MIPA, Section 5.7 has an exception for "disclosure[s that] may be required, upon advice of counsel, by applicable Law."[108] Fidelio's press release was made on advice of counsel to comply with Swedish securities laws.[109] Thus, it falls squarely within the exception. Moreover, Defendants do not identify how the press release, if it was a breach of the MIPA, was a material breach such that it excuses their performance. Accordingly, Plaintiffs' Motion for Summary Judgment regarding Defendants' Third Affirmative Defense as it relates to the press release is **GRANTED**.[110]

## C. Plaintiffs' Non-Apportionment of the Settlement Does Not Bar Recovery, but Plaintiffs Must Prove Damages at Trial.

In Counterclaim Five, Defendants contend that even if they owe any indemnification, Plaintiffs' failure to apportion damages to exclude non-

---

[108] MIPA § 5.7.

[109] D.I. 219 (Decl. of Carl-Johan Ehn in Supp. of PMSJ) ¶ 16 ("As a public company, Vimian is required by Swedish market abuse and securities regulations to publicly disclose certain events immediately. The Vimian press releases, dated 13 January 2023 and 4 April 2023, that I understand to be at issue in this case were required under Swedish law." *See also* PMSJ, Ex. 80 ("As you know, as a public company[,] Vimian Group AB is obligated to make a press release under Swedish laws and the stock exchange regulations, in relation to the settlement with J&J. Please see attached such press release which will be made public shortly.").

[110] Defendants also include allegations regarding the press release in Counterclaim Count One. For purposes of clarity, the Court dismisses any allegations regarding the press release.

18

indemnifiable amounts precludes any recovery.[111] An indemnification serves to allocate "post-closing risk."[112] The purpose of such a clause is to make the indemnifiable party whole.[113]

Defendants urge the Court to adopt the "majority rule" requiring Plaintiffs to allocate their damages with respect to Plaintiffs' indemnification claim.[114] Delaware, however, has adopted no such broad rule and the Court declines Defendants' request to do so here. Instead, the Court finds where a party argues indemnification claims must be apportioned, the basis for that apportionment must be included in the text of the indemnification provision.[115]

The language of the Indemnification Provision compels this result.[116] Neither the MIPA, nor Delaware law, impose an obligation to apportion indemnifiable damages. The use of the phrases "any and all," "arising out of or related to," and "in connection with" means the Court gives the Indemnification Provision its "broadest

---

[111] *See generally* DMSJ.

[112] *White v. Curo Tex. Hldgs., LLC*, 2016 WL 6091692, at *11 (Del. Ch. Sept. 9, 2016).

[113] *Hill v. LW Buyer, LLC*, 2019 WL 3492165, at *10 (Del. Ch. 2019).

[114] DMSJ at 22 (citing *Universal Underwriters Ins. Corp. v. Reynolds*, 129 So. 2d 689, 691 (Fla. Dist. Ct. App. 1961); *SGS U.S. Testing Co. v. Takata Corp.*, 2017 WL 385035, at *3, 8 (D.N.J. Jan. 26, 2017); *Mooris v. W. States Mut. Auto. Ins. Co.*, 268 F.2d 790, 793 (7th Cir. 1959); *Gen. Acc. Fire & Life Assurance Corp. v. Clark*, 34 F.2d 833, 836 (9th Cir. 1929)).

[115] *See HLTH Corp. v. Agricultural Excess and Surplus Ins. Co.*, 2008 WL 3413327, at *9-14 (Del. Super. July 31, 2008) (applying New Jersey law "which mandate[s] . . . apportionment . . . even in the absence of contract language to that effect," but specifically noting that "rule . . . separates New Jersey law from Delaware on this issue.").

[116] *E.g., Seagate Tech. (US) Hldgs., Inc. v. Syntellect, Inc.*, 2015 WL 5568619, at *1, 3, 5-6 (D. Del. Sept. 22, 2015).

possible" reading.[117] To read in a requirement for allocation in this provision would be to read out the broad indemnification language the parties agreed to in the MIPA. The Court will not read in allocation language in the MIPA where none exists.

To be sure, Defendants challenge certain portions of the Settlement as non-recoverable. Specifically, Defendants argue no indemnification is owed for ██████████ ██ ██ ████████████ ████," "[d]amages incurred by Fidelio," "[p]ost-MIPA [p]rofits," and "[l]iability for the '728 patent."[118] Although Plaintiffs argue the Indemnity Provision covers the entire Settlement amount, Plaintiffs also acknowledge there are "unavoidable factual disputes" that must be decided by the fact-finder at trial.[119] The Court agrees.

Plaintiffs, as the indemnitees, must prove their damages.[120] Defendants, at trial, must prove that the MIPA does not cover the "non-recoverable" amounts. Defendants' Motion for Partial Summary Judgment on the apportionment issue is **DENIED**. Plaintiffs' Motion for Summary Judgment is **GRANTED** regarding Counterclaim Five and **DENIED** regarding Counterclaim Six.

---

[117] *See, e.g.*, *Lillis v. AT & T Corp.*, 904 A.2d 325, 332 (Del. Ch. 2006) (the use of the phrase "in connection with" in an indemnification clause showed "the broadest possible authorization, and clearly envisions that any dispute plausibly related to the [subject at issue] is within the purview of the [clause]").
[118] DMSJ Opp'n at 28-29.
[119] DMSJ Opp'n at 31.
[120] *See Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 545, 548 (Del. Super. 2005).

**D. The MIPA's Indemnification Limit Caps Plaintiffs' Recovery at $99.9 Million.**

In Counterclaim Three, Defendants contend the MIPA's indemnification limit functions as a forfeiture, such that an indemnification request exceeding the "aggregate consideration" means no payment is due.[121]

The MIPA states, "No Party shall have any indemnification obligation under this Agreement to the extent the aggregate amount of indemnifiable Damages would exceed the aggregate consideration paid by the Buyer for the Units[.]"[122]

The Court previously addressed this specific language in its Memorandum Opinion regarding Defendants' Motion for Judgment on the Pleadings:

> As Defendants would have it, that language means that as soon as their indemnity obligation exceeds the "aggregate consideration paid"—even one dollar more—Defendants are relieved from paying any indemnity at all. Plaintiffs, in contrast, argue that the relevant language simply caps the indemnity obligation at the purchase price.
>
> Plaintiffs' interpretation is reasonable. The relevant language's ability to be interpreted as a cap, as opposed to a forfeiture, is evident from the other text within Section 8.3(a). Specifically, the second sentence of Section 8.3(a) explicitly creates a defined "Cap." Defendants acknowledge that the defined "Cap" is truly a cap and not a misnamed forfeiture.[123] And yet, the operative language of the second sentence of Section 8.3(a) is functionally identical to Section 8.3(a)'s third sentence. Specifically, the second sentence provides: "No Party shall have _any obligation_ to indemnify pursuant to clause (i) of Section 8.2(a) or Section 8.2(b), as applicable, _to the extent_ the aggregate amount of indemnifiable Damages suffered by the Buyer Indemnitees

---

[121] Answer ¶¶ 151-62.

[122] MIPA § 8.3(a).

[123] Claude Defs.' Mot. at 15 ("Section 8.3(a) has a provision that addresses insurance and retention, _a cap_, and forfeiture." (emphasis added)); _see also_ Claude Defs.' Reply at 19.

21

or the Seller Indemnitees, as applicable, under such clause would exceed [redacted] (the 'Cap')[.]"

In other words, a provision that Defendants admit creates a cap on indemnity uses the exact phrasing that Defendants argue must create a total forfeiture. This makes Defendants' argument unconvincing. In Defendants' attempt to differentiate the two provisions, Defendants only note that the second sentence is explicitly called a "Cap" while the third sentence refers to itself as a "limitation." For present purposes, the Court does not place such great weight on the labels ascribed to these closely related provisions. Instead, the Court finds that it is reasonable to read the nearly identical language in the second and third sentences of Section 8.3(a) as producing similar results. Because Defendants have not precluded Plaintiffs' interpretation of the MIPA, their Motions on this issue are denied. [124]

After extensive discovery in this matter, Defendants recycle their same arguments regarding Section 8.3. Tellingly, Defendants have walked away from their argument regarding "aggregate consideration."[125] During oral argument on the cross-motions for summary judgment, Defendants' counsel did not discuss this provision other than to argue Defendants were "still moving forward" on the "argument on forfeiture as set forth in the briefing."[126] The Court finds, as a matter of law, that Plaintiffs' interpretation of Section 8.3 is correct for the reasons stated in

---

[124] *Movora, LLC v. Gendreau*, 2024 WL 1675370, at *3-4 (Del. Super. Apr. 18, 2024) (emphasis in original).
[125] PMSJ Opp'n, *supra* note 87.
[126] Oral Argument Tr. at 112:13-15.

the Court's prior decision. Plaintiffs' Motion for Summary Judgment on Counterclaim Three is **GRANTED**.[127]

### E. Defendants' Affirmative Defense Regarding Plaintiffs' Failure to Mitigate Damages is Dismissed.

Defendants' Seventh Affirmative Defense states, "Plaintiffs[] have failed to take any action to mitigate damages with respect to the Patent Litigation following the closing of the transaction, including Plaintiffs' failure to settle the Patent Litigation and to obtain insurance proceeds."[128]

The duty to mitigate "generally arises *after* a breach has occurred."[129]  The alleged breach that triggered Plaintiffs' duty to mitigate was Defendants' refusal to indemnify.[130]  The Patent Litigation settled on April 4, 2023, and Plaintiffs made their indemnification request shortly thereafter on April 14, 2023.[131]  Thus, Plaintiffs' duty to mitigate did not begin until at least April 2023.  Yet, in arguing Plaintiffs failed to mitigate, Defendants only allege Plaintiffs "fail[ed] to settle the Patent Litigation and . . . obtain insurance proceeds."[132]  Any "failure to settle" would necessarily occur before the duty to mitigate arose.  Accordingly, Defendants'

---

[127] Plaintiffs also moved for summary judgment on Counterclaim Four regarding "Aggregate Consideration."  To the extent that an order is necessary given Defendants' waiver of this argument, the Court grants Plaintiffs' Motion on Counterclaim Four.

[128] Answer at 29.

[129] *NASDI Hldgs., LLC v. N. Am. Leasing, Inc.*, 2019 WL 1515153, at *1 (Del. Ch. 2019), *aff'd*, 276 A.3d 463 (Del. 2022) (emphasis in original).

[130] *See id.* at *7 (holding that, where the relevant breach involves a failure to indemnify, mitigation obligations arise after the indemnification claim is made).

[131] PMSJ Ex. 79; *id.* Ex. 82.

[132] Answer at 29.

mitigation argument fails, and Plaintiffs' Motion for Summary Judgment regarding Affirmative Defense Seven is **GRANTED**.

## F. Defendants Fail to Identify a Gap in the MIPA such that the Implied Covenant Applies.

Defendants' Sixth Affirmative Defense invokes the implied covenant of good faith and fair dealing. The implied covenant is a gap-filling mechanism to handle issues "neither party anticipated."[133] While the implied covenant "is inherent in all contracts," its role is limited to ensuring the parties do not "frustrat[e] the fruits of the bargain."[134] Accordingly, "[i]t does not apply when the contract addresses the conduct at issue."[135] The party claiming a breach of the implied covenant must identify some contractual gap in which the covenant can operate.[136]

Defendants do not identify any contractual gap such that the implied covenant applies. Rather, Defendants assert Plaintiffs breached the implied covenant by failing to make their indemnification claim in "good faith."[137] While there is "an implied obligation requiring indemnification determination[s] be made in good

---

[133] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[134] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1009, 1116 (Del. 2022).

[135] *Nationwide Emerging Managers, LLC v. Northpointe Hldgs., LLC*, 112 A.3d 878, 896 (Del. 2015) (citation omitted).

[136] *Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd*, 194 A.3d 908 (Del. 2018).

[137] PMSJ Opp'n at 24-25. Defendants assert "Buyers sought to monopolize the veterinary surgery industry[,] . . . substantially increased the sale of infringing products following the transaction [, and] . . . conducted a 'fire sale' of their new plates." *Id.*

24

faith,"[138] the implied covenant does not impose a general obligation to avoid "misconduct" as Defendants suggest.[139] The Court will not use the implied covenant to "modify [the] expressed intent" of the parties as memorialized in the MIPA's text.[140] The MIPA, negotiated by sophisticated entities, extensively outlines the parties' rights and obligations regarding the Patent Litigation and indemnification. Defendants cannot invoke the implied covenant to modify the MIPA's express intent.

---

[138] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1118-19 (Del. 2022). *Baldwin*, cited by Defendants, arose out of "an indemnitee's refusal to repay money advanced pursuant to an LLC Agreement." *Id.* at 1101. Under the terms of the LLC agreement at issue, "a Person is entitled to indemnification if the Person acted in good faith and in a manner believed to be in or not opposed to the best interests of the Company." *Id.* The LLC agreement "call[ed] for either the managers, legal counsel, or the majority of the then-outstanding unitholders to make a subjective discretionary determination as to whether an indemnitee has met a specific standard of conduct," but "d[id] not expressly state whether such determination must be made in good faith." *Id* at 1120. Thus, "[i]f indemnification under [the relevant provision] could be denied for any reason, even in bad faith, the standard … requiring the indemnitee to act in good faith [] would be rendered meaningless." *Id.* The Supreme Court thus held that "although a good faith requirement is not expressly stated in [the indemnification provision], it is implicit in [the indemnification provision's] language."

Unlike *Baldwin*, which hinged on the interpretation of the indemnification provision in question, the MIPA here is not silent and expressly outlines Defendants' indemnification obligation. While the implied covenant of good faith and fair dealing is inherent in all contracts, it is "a limited and extraordinary legal remedy[,]" and the existing contract terms control. *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010). The Patent Litigation triggered the Indemnification Provision pursuant to Section 8. Thus, Plaintiffs/Buyer Indemnitees were entitled to any damages resulting therefrom, and VOI and Defendants were responsible for such payments. A summary ruling releasing Defendants from honoring its contractual obligation to Plaintiffs in the face of the plain language of the Indemnification Provision would frustrate the parties' intent as outlined in the MIPA.

[139] *See* PMSJ Opp'n at 24.

[140] *Miller*, 2018 WL 656378, at *2.

Accordingly, Plaintiffs' Motion for Summary Judgment regarding Counterclaim Six is **GRANTED**.[141]

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is **DENIED** and Plaintiffs' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  More specifically, Plaintiffs' Motion for Summary Judgment on their indemnification claim is **DENIED** in part.  Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims Three, Four, Five, and Six and Affirmative Defense Seven is **GRANTED**.  Finally, Plaintiffs' Motion regarding Defendants' implied covenant claim is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[141] The Court notes that Defendants also allege in Counterclaim Two that Plaintiffs breached "the covenant of good faith and fair dealing," along with several other alleged breaches of the MIPA. Answer at 62.  For the sake of clarity, this portion of Counterclaim Two is dismissed.